CULPEPPER, Judge.
This is a suit for damages arising out of an incident which occurred during a strike at the Vancouver Plywood Company plant near Oakdale, Louisiana. Plaintiff, a supervisor, was leaving the plant and driving past the picket line when defendant, president of the union which was on strike, allegedly threw one-half of a brick through the window of the left rear door of plaintiff’s automobile. After a trial on the merits, the district judge awarded plaintiff $250 in general damages, plus $34 for property damage to the automobile. Defendant Appealed. Plaintiff answered the appeal seeking an increase in the award for general damages to the sum of $2,000.
The issue is whether defendant threw the brick. This is a factual question, depending largely on the credibility of the various witnesses who gave conflicting testimony. There is clearly sufficient evidence in the record, if believed by the trial judge, to support his decision. Our jurisprudence is firmly established that the factual findings of the trial judge, who saw and heard the witnesses, will not be disturbed in the absence of manifest error, particularly where these questions depend largely on the credibility of the witnesses.
We have carefully reviewed the record and adopt as our own the following portions of the opinion of the trial judge:
“There is no question but that one-half of a brick was thrown through the window of plaintiff’s automobile but there is much dispute that Mr. Stockman threw it. There were approximately 40 to 60 people in the area where the incident took place, most of whom were not members of the Union. Nevertheless it is clear that the group was sympathetic to the Union’s position and were at the picket line to discourage anyone and particularly the Evangeline Parish workmen from coming into Allen Parish to work at the plant. There is no question but that the men on the picket line were sympathetic to the Union’s point of view. *421 “It was also well established that a liquid substance was thrown onto plaintiff’s automobile (as well as on other vehicles leaving the plant) as he drove through the gathering of people at the picket line and that this substance ruined the paint on plaintiff’s automobile. No witness was able to identify anyone who threw this liquid so there is no claim for this damage.
“This incident occurred on a Parish road approximately 100 to ISO feet east of U. S. Highway 165 at a point where the railroad tracks (which run parallel to U. S. 165) cross the Parish road. Mr. Stockman was in the group of men from which the half brick was thrown. He was not with the group of men from which the liquid substance was thrown.
“Two totally disinterested Louisiana State Troopers — one from Leesville and one from Welsh — testified convincingly that they were eye witnesses to the incident and that they each saw Mr. Stockman standing with his arms folded, saw him quickly flip an object through the window of plaintiff’s automobile and saw him immediately recross his arms. Trooper Richard testified that his position was one between the automobiles and trucks which were exiting on the Parish access road on the one hand and the pickets and strike sympathizers that were along the south side of the road on the other hand. He testified that he was approximately 15 feet from Mr. Stockman and was west of him. When he saw Mr. Stockman flip the object he immediately went to Mr. Stockman to arrest him. At the same time State Trooper W. C. Gordy went straight to Mr. Stockman to arrest him. Mr. Gordy testified that he had a perfect view of Mr. Stockman; that he saw him throw the object and immediately went straight to him to arrest him. Mr. Gordy testified that his position was also on the south side of the road and that he was even with the rear end of Mr. Paquin’s car when Mr. Stockman flipped the object and that at that time Mr. Stock-man was also on the south side of the road at a point about even with the driver or the back door of Mr. Paquin’s slow moving west bound car. Both Troopers and every single one of the other witnesses who testified verified that when Troopers Gordy and Richard arrested Mr. Stockman, numerous other individuals stated that they had thrown the brick. Neither the Troopers nor the Deputy Sheriffs paid any attention to the other parties’ statements. No witness was able to identify any of the numerous parties who said ‘I threw it.’ “Chief Deputy Sheriff Hubert Holman and Deputy Leon Smith both testified for defendant. Mr. Holman testified that he was looking toward Mr. Stockman when he saw something flash through the air right by Mr. Stockman which object immediately crashed into plaintiff’s automobile; that he did not see Mr. Stockman throw anything and that it looked like it came from behind Mr. Stockman. Deputy Holman testified that he was standing six or seven feet from Mr. Stockman; nevertheless he made no effort to determine who threw the object. He justified this failure to investigate by testifying that it was all he could ■ do at that time to prevent mob action. Mr. Holman was positive that Troopers Gordy and Richard were not on the south side of the road at the time of the accident and that both of them came from the north side of the road across to the south side in order to arrest Mr. Stockman. It is to be noted that all other State Troopers (at least 6 and possibly 10) were north of the road and that Trooper Richard was slightly north of Chief Deputy Holman’s position. All parties agree that the object thrown came from the immediate area where Mr. Stockman was standing. All witnesses who described the position of Mr. Stockman’s arms, agree that he had his arms folded.
“Deputy Sheriff Leon Smith testified that he was within 4 or 5 feet of Mr. Stockman but was not paying any particular attention to him at the time of the incident. He did not see Mr. Stockman throw any object to make any unusual movement. Mr. Smith was positive that both Troopers came from *422 the north side of the access road. Mr. Smith has no recollection of where he was looking until,he heard the sound of breaking glass. Although he heard many of the men around him say ‘I threw the brick’ he conducted no investigation in connection with this incident.
“In addition to' the two Deputies there were 5 other witnesses who testified for defendant to the effect that they were sure that Mr. Stockman did not throw the object, and that they were certain both officers were on the north side of the road at the time the brick was thrown. Mr. Stockman himself testified that he did not throw the brick and that the officers came from the north side of the road to make the arrest.
* * * * * *
“As defense counsel forcefully argued, Mr. Odlie H. Stockman has an excellent reputation. The record shows that Mr. Stock-man on occasions was requested to assist in restraining crowds and was helpful. However, as fine as Mr. Stockman’s reputation is, the law is that a good reputation will not justify the disregarding of positive proof that a wrong was committed.
“As to the witnesses Chief Deputy Sheriff Holman and Deputy Sheriff Smith, it is this Court’s conclusion that these are disinterested witnesses and their testimony is entitled to great weight. However, their testimony is negative testimony as against the positive testimony of the State Troopers. It is to be noted that Mr. Smith admitted on cross-examination that he doesn’t remember where he was looking until he heard the sound of the brick crashing through the glass. By the time this happened, according to the Troopers Richard and Gordy, Mr. Stockman’s arms were again crossed.
“It is to be noted that although both Deputies were in the immediate vicinity and saw the arrest take place and now state that they do not think that Mr. Stockman threw the brick, neither one made any effort to investigate or determine who, if it was someone else, did throw the brick.
“Plaintiff has carried the burden of proving that defendant threw the brick and is entitled to judgment for all damages.
“Although it cost approximately $200.00 to repair plaintiff’s vehicle, only $34.00 of this damage was due to the throwing of the brick. Plaintiff is, therefore, entitled to $34.00 for property damage.
“As to plaintiff’s alleged pain and suffering, he did not go to a physician. Nevertheless he testified that he was frightened and emotionally disturbed for several days following the incident. * * * It is clear that plaintiff is not entitled to punitive damages. For the pain, suffering, worry and humiliation, plaintiff is entitled to $250.00.”
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.