PRICE, Judge.
The widow of Johnnie W. Perkins perfected this appeal from a judgment of the district court rejecting her contention that a loan made by Perkins from Carter Federal Credit Union was covered by credit life insurance.
Prior to his death on November 24, 1968, Perkins was a salaried employee of International Paper Company at its mill in Springhill, Louisiana. Carter Federal Credit Union (hereafter called “Carter Federal”) is a federally chartered mutual credit organization operated by and for the benefit of employees of International Paper Company.
On September 20, 1968, a loan of $4,-078.92 was made to Perkins by the Credit Union, the proceeds of which were used to purchase a 1968 Mercury automobile. A note in this amount was executed by Perkins, secured by a chattel mortgage on the vehicle. On June 23, 1969, subsequent to the death of Perkins, the automobile was sold under executory process for $2,532.60. Carter Federal then instituted this action against Mrs. Johnnie W. Perkins, the duly qualified administratrix of the Estate of Johnnie W. Perkins, seeking a deficiency judgment for the balance owed on the note subject to application of the proceeds of the foreclosure sale.
*656 Mrs. Perkins filed a reconventional demand against Carter Federal and a third party demand against Cuna Mutual Insurance Society (hereinafter called “Cuna”) alleging these parties are solidarily liable for the full amount of the balance owing on the note at the time of Perkins’ death as the loan was insured against the death or disability of the borrower under the master policy issued to Carter Federal by Cuna.
The trial court found the loan was not covered by credit life insurance and rendered judgment in favor of plaintiff for the sum of $4,078.92, together with interest and attorney’s fees of 20 percent, subject to a credit of $2,532.60 (the proceeds of the sale of the automobile).
We have for review on this appeal the sole question of the correctness of the trial judge’s conclusion that the Perkins’ loan was made with the understanding it would not be subject to the protection of the master credit life insurance policy in effect between Cuna and Carter Federal.
This group policy of life insurance issued by Cuna to Carter Federal covering insurable loans procured through the Credit Union qualifies its coverage as follows:
“(c) PHYSICAL REQUIREMENT— Insurance is granted by Cuna Mutual only to a member of the credit union, who, at the time of the granting of such coverage, is physically able to perform the usual duties of his livelihood. The time of granting coverage is the date coverage is issued by CUNA Mutual by contract or endorsement, or the date of the deposit, whichever is applicable as heretofore provided. Once granted, coverage will remain in force regardless of future health of the member. Balances to the credit of a member who is physically ineligible on the effective date of the contract, or of any endorsement increasing coverage, or when additional deposits are placed to his credit, will be insured as of the date the member becomes able to perform the usual duties of his livelihood.”
Certain advertisements by Carter Federal circulated to all of its members were filed in evidence which indicate that all loans made to members are insured against their death or disability up to the amount of $10,000.00 at no cost to the borrower. Mrs. Perkins testified that she conducted all negotiations in regard to the loan as her husband was in the hospital undergoing medical tests. She contends that at the time she first contacted Mr. Pat Hardy, the manager of Carter Federal, to inquire if the Credit Union would make the loan for the purchase of a family automobile, she advised him that her husband was in the hospital. She further testified that he told her the loan could be made and gave her the necessary forms to be signed by her husband to consummate the transaction; several days later Hardy called the Perkins’ residence and advised her son that the loan had been turned down by the Loan Committee. Subsequent to this conversation, Hardy called Mrs. Perkins at the hospital, where she was staying with her husband, and advised her that the Loan Committee had reconsidered and would now make the loan. Mrs. Perkins denied that Hardy ever mentioned that the loan would be uninsured.
Hardy testified that when Mrs. Perkins first contacted him in regard to the loan, he was advised that her husband was in the hospital merely for some minor tests and would be home the first of the following week. At the time the application was submitted to the Loan Committee it was brought to their attention that Perkins was still hospitalized and scheduled for surgery, and consequently, the Committee refused to approve the application because the loan would not be insured under the group life policy as the borrower could not meet the requirements of the policy providing he must be physically able to perform the usual duties of his occupation at the time the insurance is made effective. Hardy contends he advised the Perkins family of *657 the reason for the rejection by the Committee. Hardy also testified the loan was reconsidered by the Committee only after the intercession of the decedent’s brother, Jessie Perkins, who was an employee of International Paper Company and an influential Union official.
This testimony was corroborated by two members of the Loan Committee, Ray Whittington and L. L. Smith. These witnesses further testified that Hardy was instructed to inform the borrower that the loan, although granted, would definitely not be covered by credit life insurance. Hardy contends that at the time he told Mrs. Perkins the loan had been reconsidered and approved, he specifically told her it would not be covered by credit life insurance.
The testimony of Jessie Perkins, brother of the decedent, lends credence to the testimony of Hardy as opposed to the conflicting version given by Mrs. Perkins and other members of her family.
The trial judge, in his reasons for judgment, evaluated the testimony of all witnesses and resolved the conflicting versions in favor of the plaintiff, Carter Federal. It is a well recognized rule of law that the factual findings of the trial judge who saw and heard the witnesses will not be disturbed in the absence of manifest error, particularly where these findings depend largely on the credibility of witnesses. Paquin v. Stockman, 203 So.2d 419 (La.App. 3d Cir. 1967). The testimony of Hardy and other members of the Loan Committee is logical when viewed in the-light of their duties and obligations under the terms of the policy of insurance issued by Cuna in regard to the extension of coverage to a loan procured by a borrower who is at the time in the hospital pending surgery. Mrs. Perkins was admittedly very emotionally upset when informed of the original denial by the Loan Committee and the subsequent reconsideration. Add to this the corroborating testimony of Jessie Perkins on the question of communication to the Perkins family that the loan would not be insured and the evidence preponderates in favor of the plaintiff, Carter Federal (defendant in reconvention), and the third party defendant, Cuna.
For the foregoing reasons the judgment appealed from is affirmed, at appellant’s cost.