428 So.2d 882 (1983)
Leroy JACKSON
v.
Charles TATE, et al.
No. 82 CA 0490.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
Corwin B. Reed, and Edward J. Lassus, Jr., New Orleans, for plaintiff-appellee.
James H. Drury, New Orleans, for defendant-appellant.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
On August 2, 1980, Leroy Jackson (plaintiff) was injured when involved in an accident while riding in a 1978 Thunderbird owned by Dorothy Ross, driven by Charles Tate (Tate), and insured by American Indemnity Company (American). The accident occurred on U.S. Highway 51, between Amite and Independence, Louisiana. Defendant Charles Tate was proceeding south on U.S. 51 toward Independence. Plaintiff was seated in the front passenger seat, and Michael Tanner was seated in the rear, behind plaintiff. The facts surrounding the one-car accident were hotly contested; however, the trial judge chose to believe plaintiff's version and awarded damages to him.
Defendants Tate and American have perfected a suspensive appeal and allege three specifications of error: (1) the trial court erred in holding that plaintiff had proven his case by a preponderance of the evidence; (2) alternatively, the trial court erred in not finding plaintiff guilty of contributory negligence and reducing his damages commensurate with such negligence; and (3) the trial judge erred in awarding plaintiff $2,400.00 in lost wages.
Tate is plaintiff's nephew. On cross examination, he testified that as he proceeded south on the old Amite Highway:
"... when we was coming in the curve, because I didn't know the curve, I was driving a little bit too fast. And when I made the curve, you could say I lost control of the car."
He further testified that plaintiff was talking and did not grab for the steering wheel and did nothing to cause him to lose control *883 of his vehicle; that no oncoming vehicle was involved in any way; that he was not drunk, nor was plaintiff or Tanner; and that his speed was about 40 miles per hour at the time his vehicle left the road.
Tanner, plaintiff's cousin who was occupying the back seat, testified that they were going south toward Independence at about 35 to 40 miles per hour; that the road was "curvy"; that they were just riding and talking when they came to a steep curve and Tate lost control.
Plaintiff testified that Tate went into a curve and did not straighten up; that the car came over and hit a ditch; that no oncoming vehicle was involved in any way; and that he did not grab the steering wheel at any time and was not drunk at the time.
There were no other witnesses to the accident. Defendants argue that the trial court committed manifest error in failing to properly consider three items of impeaching evidence that were introduced. The trial judge in his oral reasons for judgment made the following comments:
"And the Court readily admits that there is a very, very serious factual question as presented. That is, whether the accident happened according to the testimony of the plaintiff that as the driver of the car, Charles Tate, endeavored to make a curve, he misjudged it and was traveling too fast, was not attentive, lost control of his vehicle and ran into the ditch. Or whether there was another car approaching which forced the Jackson vehicle to take evasive action and as a result of that evasive action, ran into the ditch. And one step further, whether in the course of this encounter with the alleged other car, the plaintiff, Leroy Jackson, did, in fact, grab the steering wheel causing his vehicle to veer into the ditch. And of course, the factual question cannot be avoided. And the Court is going to rule that the plaintiff has proved his case by a preponderance (sic) of the evidence, which means that the Court takes the plaintiff's version corroborated by that of the guest passenger. We don't know what comment, if any, it should make ... should be made on the testimony of Tate, which is impeached by a previous statement he gave to the adjustor. But we have taken all of these factors into consideration and find that the plaintiff has proved his case."
Defendants direct our attention to the Lallie Kemp Charity Hospital records, and in particular, plaintiff's history as recorded by Dr. Frank Healey, which stated:
"Plaintiff is apparently on alcoholic binge, was riding in a car in the passager (sic) seat when car was driven into a ditch to avoid another car."
Additionally, Tate stated, in a written statement given to American's adjustor after the accident, that they were proceeding toward Independence on a two-lane highway at about 40 miles per hour in a steep curve; that they met an oncoming car which was traveling fast; and that about half of the oncoming vehicle was in his lane and across the center line of the highway. He also stated therein:
"At this time when we met the oncoming car Leroy and I were talking when he tried to grab the wheel and turn it. I also was trying to turn the wheel. I don't recall if Leroy said anything while he was doing this. In the process we crossed the eastbound lane of traffic and hit a ditch on the left side of the road."
Tate recanted this version at trial. His reason for his original statement was that he did not want his girl friend, Dorothy Ross, to have any trouble; so he invented the story about the other car and plaintiff grabbing the wheel. At trial, under oath, Tate stated that the truth was that he did not know the road. To further complicate problems arising in connection with Tate's credibility, he is presently in Tangipahoa Parish Prison on a manslaughter conviction.
Also, plaintiff's sister Bobbie George admitted on cross examination that after the accident plaintiff told her that they had tried to avoid another car. Plaintiff denied making such a statement, but admitted that he told her he had heard rumors about another car being involved in the accident.
*884 This evidence was certainly impeaching in nature, but the trial judge conceded in his reasons for judgment that there was a "very, very serious factual question" as to whether the accident occurred according to plaintiff's testimony. He also made specific reference to Tate's testimony which he said was impeached by the statement given to the adjustor, but then added:
"But we have taken all of these factors into consideration and find that the plaintiff has proved his case."
A reviewing court may not disturb a trial court's factual determinations without a finding that same was manifestly erroneous and/or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In McDonald v. Book, 215 So.2d 394 (La.App. 3rd Cir.1968), overruled on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3rd Cir.1976), the court stated:
"Evaluation of credibility is primarily within the province of the trial court. In the absence of clear improbability or other convincing demonstration of error, the appellate court should not, on review, overturn the trier of fact's acceptance of one sworn version of an accident over a contrary one, nor its evaluation of the truthfulness and reasonableness of testimony; nor is the trial court's evaluation to be ignored because a greater number of witnesses testify contrary to its conclusion. Paquin v. Stockman, La.App. 3 Cir., 203 So.2d 419; Satterwhite v. Zurich Insurance Co., La.App. 1 Cir., 199 So.2d 429; Savage v. Haynes, La.App. 3 Cir., 146 So.2d 285. Further, and considering its opportunity for demeanor evaluation, the trial court may properly accept a witness' sworn trial version over seemingly inconsistent prior statements. Fontenot v. Fidelity General Insurance Co., La.App. 3 Cir., 185 So.2d 896."
215 So.2d at 396-397.
We note that, notwithstanding Dr. Healey's comments in the hospital records, all the witnesses testified that no one was drunk in the car; and they all denied that the car was driven into a ditch to avoid another car. The trial judge made no finding relative to Tate's testimony but did comment upon it and indicated that he did not know what should be done about that testimony. In regard to Bobbie George's statement, plaintiff's explanation, that he had told her that he had heard rumors about another car being involved, apparently satisfied the trial judge. The trial judge, who is in the unique position of seeing and hearing the witnesses, obviously felt that plaintiff had been rehabilitated. He concluded that he had taken all the factors into consideration and found that plaintiff had proven his case. We are unable to say that the trial judge was clearly wrong in accepting plaintiff's testimony as corroborated by the testimony of Michael Tanner.
Defendants' only assignment of error relative to the award of quantum was in connection with the trial court's award of $2,400.00 for lost wages. In making that award, the trial court said:
"... the Court finds that the plaintiff was disabled for a period of sixteen weeks at an average of $150.00 per week or the sum of $2,400.00."
Approximately sixteen weeks after the accident, on November 21, 1980, plaintiff was discharged by his physician. An hourly wage of $3.75 for a forty-hour work week totals $150.00 ($150 × 16 = $2,400).
Plaintiff testified that prior to the accident he earned from $500 to $700 per week as a taxi driver. His first employment after being discharged was as a porter for Jefferson Care Center in Jefferson Parish. His hourly wages there were $3.75. Thereafter, he had several positions which paid from $3.75 to $7.25 per hour. At the time of trial, he was employed as an orderly at the Seventh Ward Hospital in Hammond making $3.88 per hour.
We may not disturb the trial court's award for lost wages without finding that he abused his great discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). When a claim for lost wages cannot be proved with mathematical certainty, it can be established by any proof that reasonably establishes the claim, such as the plaintiff's *885 own testimony. The courts have reasonable discretion to assess damages based upon all the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). We are not in a position here to say that the trial judge erred, since he limited lost wages to the actual period that the medical witness said plaintiff was unable to work. He utilized the minimum wage over a forty-hour work week to compute the amount of lost wages. There was no abuse of discretion in this award.
For reasons hereinabove set forth, we find that the trial judge was not clearly wrong on his liability finding and that he did not abuse his great discretion in his award for lost wages. Accordingly, his decision is affirmed at defendants' costs.
AFFIRMED.