660 So.2d 107 (1995)
Mary Jane GARDNER, Plaintiff-Appellant,
v.
Christopher McDONALD, M.D., Defendant-Appellee.
No. 27,303-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
*108 Nelson, Hammons & Self by John L. Hammons, Hutton W. Sentell, Shreveport, for appellant.
*109 Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Paul M. Adkins, Shreveport, for appellee.
Before WILLIAMS, STEWART, JJ. and PRICE, J. Pro Tem.
STEWART, Judge.
The plaintiff, Mary Jane Gardner, instituted this medical malpractice action against Dr. Christopher McDonald, an oncologist, alleging that defendant breached the standard of care by failing to inform plaintiff, a breast cancer patient, of the results of an abnormal bone scan. A jury rendered a verdict in favor of the defendant, and the plaintiff subsequently lodged this appeal. We affirm.

FACTS
In 1989, Mary Jane Gardner detected a lump in her breast and was referred to Dr. Keith Mason, a Shreveport surgeon. After discovering that the lump was malignant, Dr. Mason performed a bilateral radical modified mastectomy. Plaintiff was then referred to Dr. McDonald, an oncologist, for follow-up treatment.
Following the surgery, chemotherapy was commenced and on March 17, 1990, a bone scan was conducted, which revealed no evidence that the cancer had metastasized.[1] This scan was to be used as the baseline scan by which to compare future bone scans.
Dr. McDonald continued to see Mrs. Gardner at regular intervals for follow-up examinations. On June 7, 1991, plaintiff was scheduled for a regular visit with the defendant. Records of that visit reveal that Mrs. Gardner did not complain to the defendant or his nurse of any pain. A routine bone scan was performed by the radiologist on June 14, 1991, which revealed several "hot spots" or areas in the upper right rib area, described by the radiologist as "abnormal."
Dr. McDonald reviewed the bone scan and consulted with the radiologist and the patient. Based upon the patient's failure to indicate that she was in pain, the patient's chemistry profile and blood count, the defendant concluded that the bone scan was not diagnostic of metastasis of the breast cancer in the patient's bone.
The plaintiff later returned to Dr. McDonald for follow-up visits in February 1992 and May 1992. During her May visit, the plaintiff complained of pain in her pelvis and shoulder areas. At this time, another bone scan was taken, which conclusively revealed that the cancer had metastasized. The plaintiff was informed of this occurrence by Dr. McDonald and told of the various treatment options, including hormonal manipulation. Mrs. Gardner sought a second opinion from doctors at Baylor University and LSU Medical Centers. She later began hormonal manipulation with Dr. Gary Burton at LSU, using the drug Tamoxifen. The plaintiff's cancer is now in remission.
Plaintiff originally filed suit against Dr. McDonald and his insurer, Louisiana Medical Mutual Insurance Company. Dr. McDonald later settled with the plaintiff. This action has been continued solely against the Louisiana Patient's Compensation Fund. At trial, the jury rendered judgement in favor of the defendant and determined that the plaintiff had established the applicable standard of care ordinarily exercised by a physician practicing in the specialty of oncology, but found that plaintiff failed to establish that Dr. McDonald lacked the degree of knowledge and skill or failed to exercise the standard of care and judgment ordinarily exercised by other such physicians. Plaintiff now appeals that verdict of the jury.

DISCUSSION
In her brief, plaintiff argues that the defendant breached the applicable standard of care when he (1) ignored the bone scans and the accompanying radiologist's report; (2) neglected to perform a differential diagnosis; and (3) failed to inform the patient of her abnormal bone scan.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," *110 and where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989), citing Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La. 1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that it had been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979). Where documents or evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1983), writ denied, 443 So.2d 586 (La.1983). But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (La.App. 1st Cir.1983), citing McDonald v. Book, 215 So.2d 394 (La.App. 3d Cir.1968), overruled on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3d Cir.1976).
After reviewing the record, we cannot agree that the jury erred when it concluded that Dr. McDonald did not breach the standard of care required of him as an oncologist. Based on our review of the record, we find no reason why the jury could not reasonably credit the testimony of the defendant's witnesses and reject the testimony of the plaintiff's with respect to this question.
First, plaintiff asserts that the defendant breached the standard of care when he ignored the results of the June 1991 bone scans and the recommendations of the radiologist to conduct a plain film study to determine the cause of the abnormalities in the scan.
Dr. McDonald testified at trial that when bone scan reports indicate abnormalities, it is his habit to go to the lab to discuss the recommendations with the radiologists and to view the scans personally. Although Dr. McDonald had no independent recollection of reviewing the plaintiff's particular bone scans, both Dr. McCook and Dr. Homza, radiologists who conducted bone scans on plaintiff, testified that Dr. McDonald regularly visited the radiology department to review all of his own studies. Dr. McCook further stated that "Dr. McDonald [was] one of the better doctors about [reviewing the scans with the radiologists.]" Additionally, Dr. McDonald's initials, "CM," appear at the end of the radiology report. McDonald testified that this indicates that he received and read the report of the radiologists.
Despite the absence of specific written documentation indicating that defendant received and reviewed the scans and the report, there was a "reasonable factual basis for the finding of the trial court" that he did *111 conduct a review of the report. This argument lacks merit.
Next, plaintiff argues that the defendant breached the standard of care by failing to perform a differential diagnosis. Specifically, plaintiff contends that after reviewing the bone scans and observing the abnormalities, the defendant should have conducted further tests to determine conclusively if the cancer had metastasized.
Dr. McDonald testified that he reviewed the bone scans and the recommendations of the radiologists, along with other available data, and concluded that the scan was not diagnostic of a metastasis of plaintiff's breast cancer. Defendant stated that although the possibility that metastasis had occurred was not completely ruled out, he did not believe that one scan, without symptoms of cancer, was enough to tell the plaintiff that she had been diagnosed with metastatic cancer.
Dr. Mansour, an oncologist from Alexandria, also testified that whenever a patient with a history of breast cancer walks into the office of an oncologist, the oncologist's differential diagnosis will always include metastatic breast cancer. But, he opined that it is that oncologist's duty to weigh the patient's history, physical exam results, and his own personal knowledge of the patient to determine what any single test means.
Moreover, Dr. Gary Burton, an oncologist at LSU and plaintiff's own witness, testified that even if an abnormality exists on a bone scan, the oncologist may conclude that it needs further assessment or he may determine that "the abnormality is insignificant and that intervention would make no difference in the outcome of the patient." Dr. McCook also testified that although it would have been his recommendation as a radiologist to conduct further studies on the abnormalities, he concluded that it is ultimately the decision of the treating oncologist to be considered in the context of the total care of the patient.
We find that the evidence clearly indicates that it was reasonable for the jury to conclude that, upon review of the data available in June of 1991, Dr. McDonald properly conducted a differential diagnosis, which excluded diagnosable metastatic cancer. Thus, this assignment also lacks merit.
Finally, plaintiff's argue that the defendant breached the standard of care by failing to inform the plaintiff of the results of the June 1991 bone scans and the accompanying recommendations of the radiologist.
Mary Jane Gardner had been one of the defendant's patients since her mastectomy in 1989. She testified that she had been a good patient who had followed the instructions of her doctor to the letter. Dr. McDonald also testified that he looks for symptoms in a patient that are an indication of a recurrence of cancer, and pain is one of those symptoms.
On June 7, 1991, the day of plaintiff's regular visit to Dr. McDonald, plaintiff was interviewed by Joan Love, a registered nurse, who conducted the nursing assessment of patients at that time. The interview revealed that although plaintiff complained of a "crick" in her neck, she had no complaints of the severe, debilitating pain commonly associated with cancer. Defendant testified that on the date of Mrs. Gardner's visit, her physical examination was unremarkable, and her chemistries (lab tests), blood work, and chest x-rays were all normal.
Dr. McDonald ordered bone scans to be taken of the plaintiff on the day of her visit. However, at trial, defendant, along with Dr. Mansour, testified that bone scans are not recommended because of the likelihood of a false positive result and because scientific studies have shown that they do not lengthen the lifespan of the patient. Although the June 1991 bone scans of the plaintiff revealed certain abnormalities, Dr. McDonald decided that these scans were not a conclusive indication that plaintiff's cancer had metastasized, when combined with the other results of the visit. It was not until June 1992, when the plaintiff began to complain of severe pelvic pain, that Dr. McDonald conclusively diagnosed Mrs. Gardner with incurable cancer.
As a practicing oncologist for a number of years, Dr. McDonald was well aware of the emotional and psychological toll that the revelation of incurable cancer would have upon plaintiff and her family. One of his patients had committed suicide and others had experienced *112 deep depressions. Clearly, Dr. McDonald correctly chose to avoid that risk until presented with conclusive proof. Furthermore, Dr. Mansour testified that he saw nothing wrong with the actions of the defendant and did not agree that defendant's actions caused the plaintiff any harm.
We find, as the jury did, that defendant did not breach the standard of care, when he decided not to inform plaintiff of the bone scan results without conclusive evidence of metastatic cancer. This assignment is also without merit.

CONCLUSION
For the foregoing reasons, we affirm the findings of the jury that the defendant did not breach the applicable standards of care. Costs are assessed to the appellant.
AFFIRMED.
NOTES
[1] The transfer of disease from one organ or part to another not directly connected to it. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 945 (25th ed. 1974).