ItLANDRIEU, Judge.
Canal Place Complex (Canal Place) appeals from a judgment the trial court rendered in favor of Helen Gooden (Gooden). A jury determined that Canal Place was strictly liable for Gooden’s injury, awarded her damages of $125,555.55, and assigned 71% of the fault to Canal Place and 29% of the fault to Gooden.
For the reasons stated herein, we reverse the trial court’s judgment and dismiss plaintiffs suit.

STATEMENT OF THE FACTS

This case involves a slip and fall that occurred on November 10, 1989, when Gooden was descending steps onto the Glen Gardner Plaza of Canal Place. On the day of the accident, a Christmas tree was being erected in front of Canal Place and all pedestrian traffic entering the building had been routed through the plaza area. Gooden, who was described as “heavily obese”, was carrying hot lunches for delivery to employees in the building. A Canal Place security guard spotted Gooden as she approached a set of five steps. He realized that, because |2she was carrying a large box[1] in front of her with both hands, she could not see the steps or use the handrail, and was going to have difficulty descending the steps. He rushed over to help her, but before he reached her she had fallen from the top of the steps. Gooden sustained a broken foot as a result of the fall.
Gooden sued Canal Place and its insurer for negligence alleging that she “slipped and fell on Christmas decorations” that had been left on the stairs and caused her to fall. More than three years later, Gooden amend *952 ed her complaint and added a claim under strict liability for a structural defect. Goo-den specifically claimed that she “was caused to slip and fall down upon the steps” because the “steps were loose, worn, depressed, broken and uneven; parts of the step were worn and broken away and the steps were slick and slippery and in a dangerous condition.” During the trial, Gooden waived any and all claims she had for negligence against Canal Place.
After a trial on the merits, the jury determined that a crack in the area surrounding the bottom of the steps was a defect which created an unreasonable risk and was the cause of Gooden’s fall. Canal Place appeals this decision asserting that there was insufficient evidence for the jury to conclude that the defect at the bottom area of the steps created an unreasonable risk of harm and was the proximate cause of the slip and fall accident. Both parties contend that the jury erred in assigning 29% of the fault to Goo-den.

DISCUSSION

Strict liability for damage caused by a defect in a building is established by the Louisiana Civil Code.[2] To sustain such a claim, Gooden had to prove the Igsteps and surrounding area were in the care and custody of Canal Place, that the premises had a defect which created an unreasonable risk of harm, and that Gooden’s injury was caused by the defect in the steps. See Loescher v. Parr, 824 So.2d 441 (La.1975). Both parties stipulated that Canal Place had custody and control over the steps and the surrounding area where Gooden fell.

Defect and Unreasonable Risk of Harm

Canal Place asserts that there was insufficient evidence to prove the second element of strict liability, ie., that there was a defect in the steps that created an unreasonable risk of harm. Appellate review for sufficiency of the evidence begins with a review of the facts using the manifest error standard. Ambrose v. New Orleans Police Dep’t Ambulance Service, 93-3099 (La. 7/5/94) 639 So.2d 216, reh’ing denied, (Sept. 15, 1994).
Although Gooden claims Canal Place was strictly liability for broken and uneven steps, no evidence was introduced that the steps were defective. However, the emergency medical technician who attended to Gooden testified that he “kind of vaguely lookfed] around” and noticed that some of the slate tile at the base of the steps where Gooden had landed were cracked. He described the crack as looking like a spider web. He further testified that cracked slate was level with no raised areas or displaced pieces of slate. Canal Place’s security guard testified that he did not see a crack when he investigated the area.
Gooden presented evidence that a yellow caution sign, located about five to six feet away from where she had fallen, indicated both the seriousness of the defect and that Canal Place had knowledge of this defect. However, we find it | unrealistic for Canal Place to place a caution sign five to six feet away from the crack and then route all pedestrian traffic directly over the danger. We believe it more probable that the sign was to deny access to the area where the Christmas tree was being erected.
We do not agree with the trial court that the premises were defective and created an unreasonable risk of harm for which Canal Place should be strictly liable. However, even though an appellate court might believe its inferences from the facts are more reasonable than the fact finders, reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), on remand to, 558 So.2d 1360 (La.App. 4th Cir.1990), writ denied, 561 So.2d 105 (La.1990). Therefore, we do not disturb the fact finder’s determination and find no merit in this assignment of error.

*953
Proximate Cause

Canal Place next argues that the jury erred in finding that the defect in the steps was the proximate cause of Gooden’s fall. To establish proximate cause, Gooden had to prove that her injuries more probably than not were caused by the crack at the bottom of the steps. We find that the jury was clearly wrong in determining that the crack at the bottom of the steps caused Gooden’s fall. No reasonable person hearing the evidence presented at trial could have determined that a crack in a piece of slate in the area surrounding the bottom of steps could have caused Gooden to fall down the steps.
The set of steps that Gooden was descending at the time of her fall had five steps. The evidence consistently and overwhelmingly shows that Gooden slipped when she misjudged her footing and fell to the bottom of the steps. Armando Vado, a former security guard at Canal Place, testified that he saw Gooden slip at the top of the steps and fall down the steps. His testimony was as follows:
IsA. At the time I was in Glen Gardner Plaza is where the accident occurred.... At the time when I looked to the left to the steps that comes from the shopping mall entrance into the office tower, I noticed a lady coming down the stairs carrying at the time what looked like lunches and things in a brown box.... I saw that she was not going to be able to make that first step, so when I went over to try and assist her to get her boxes and help her is when she just started falling, and I mean she just fell down the stairs.
Testimony omitted
Q. Do you know how many steps all total there are in the area where Mrs. Gooden fell?
A. Approximately four or five steps.
Q. Can you recall which of those four or five steps she actually fell upon or where the fall started?
A. It started as she got off the ground level on to the first step that would bring her down to Glenn Garden Plaza, so the first step is where she lost her footing.
This testimony was consistent with the information Vado gave to the building investigator and was recorded in the accident report completed shortly after the accident.
Vado’s recollection of the accident was corroborated by Gooden herself. Twice she testified that she fell at the top of the steps:
Q. Do you recall — can you tell the jury how many total steps there were that you were going down?
A. I think it was about five steps. I got to the — I got off the top. I was on the next step and I went to step to the next one and that was it right where I went. That’s when I went to go to the next one, I landed down on my butt.
(Testimony omitted)
Q. So the second step is where your left foot slipped; is that correct?
A. Yes. Right where I was going down, that’s where I went and landed.
On another day of the trial, Gooden gave the same explanation of what happened:
Q. Isn’t it true you earlier testified that you actually slipped on the second step from the top?
IcA- I was on the — this is the first step (indicating). That’s the next step, then the next step I was down. Right where I slipped, that’s where I went down, right on my sit down.
Q. So your testimony is that you actually landed while—
A. Right where I slipped.
Q. You actually landed and your body was still on the set of steps, not at the bottom?
A. No, sir. It was flat on the ground.
Q. Didn’t you earlier testify there were five steps?
A. That’s what it was, five steps.
Q. When you just said you went down the first step and then on the next step?
A. I went the first, second, and next step I was down. My feet was on that second step, and when I went to go down, that’s where I slipped. That’s where I landed, right there.
Gooden signed the record of the triage nurse who took her history upon admittance *954 to the emergency room. The report included the phrase “States at Canal Place was walking down steps, missed a step & fell down two steps.” The emergency medical technician’s report, also signed by Gooden, stated that “she misjudged the bottom step which caused her to fall.” Upon cross-examination, Gooden stated that both the triage nurse and the technician had lied in their respective reports. Gooden testified as follows:
Q. Did you at any time tell the nurse how the accident happened?
A. No.
Q. You never did?
A. I told her that. When I was at the deposition I told them that.
Q. So if there’s any information in this report about you telling her how the accident happened that—
A. A lie. I didn’t tell her that. I didn’t tell her nothing about the accident.
Q. And you didn’t tell the EMT nothing about the accident?
I7A. No. I sure didn’t.
Q. So if either of them testify you did tell them about how the accident happened, they would both be lying?
A. That’s right.
This Court finds little credibility in Gooden’s testimony that two medical personnel who treated her at different times recorded the same “lie” on separate reports.
The evidence was consistent that Goo-den who was carrying a large package in front of her and not using the handrail fell down the steps in Glen Gardner Plaza because she misjudged a step and lost her footing. A court of appeal may find manifest error in a finding purportedly based upon a credibility determination when documents and evidence so contradicts a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness’s story. Gardner v. McDonald, 27,303 (La.App. 2d Cir. 8/23/95), 660 So.2d 107. We find that the jury’s determination that Gooden fell because of a defect at the bottom of the steps clearly wrong.
For the above reasons, we reverse the trial court’s judgment and dismiss the plaintiffs claim. Costs are assigned to the plaintiff.

REVERSED AND RENDERED.

JONES and WALTZER, JJ., dissent with reasons.

. Gooden testified that she carried the lunches in plastic bags. We did not find the type of container relevant.

. "The owner of a building is answerable for the damage occasioned by its ruin, when it caused by neglect to repair it, or when it is the result of a vice in its original construct.” La.Civ. Code art. 2322 (West Supp.1995).
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody_" La.Civ.Code art. 2317 (West Supp.1995).