**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**NATIONAL BANK OF COMMERCE IN**
**NEW ORLEANS, Defendant-Appellee.**
**No. 29698.**

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1971.

Rehearing Denied March 5, 1971.

William D. Ruckelshaus, Asst. Atty. Gen., Gerald J. Gallinghouse, U. S. Atty., Alan S. Rosenthal, Alexander P. Humphrey, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Henry P. Dart, III, Dart & Dart, New Orleans, La., for defendant-appellee.

Before RIVES, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

This action was brought by the United States of America on behalf of the Treasury Department to recover the proceeds of twenty-two Treasury checks in the total sum of $7,241 from the National Bank of Commerce in New Orleans, Louisiana.[1] The complaint was based on a written contract of guaranty and for money paid by mistake subsequent to the death of Raymond D. Clark, payee on the Treasury checks. All of the checks were indorsed and negotiated by the Bank after Clark's death. The Government and the Bank filed cross-motions for summary judgment. The District Court denied the motion of the Government and granted that of the Bank, dismissing the complaint. The Government appeals from that judgment. The District Court, in finding for the Bank, was of the opinion that "The loss, if any, of which the Government complains was caused solely through the fault, neglect and delay of its own agents" and that the Bank "acted in good faith and with due diligence throughout." Without impugning the good faith of either party, we reverse for reasons which follow.

A chronology of the pertinent facts follows:

In December 1959, Clark, a retired Civil Service employee, requested the United States Civil Service Commission to send his monthly annuity checks to the National Bank of Commerce in New Orleans for deposit to his checking account. The checks were accordingly forwarded. The Bank in turn indorsed the checks, credited them to Clark's account, and presented them for payment to the Treasurer of the United States.

On May 20, 1965, Clark died, thereby terminating his right to these annuity checks. 5 U.S.C. § 8345(c). The fact that Clark died was not communicated to either the Bank or the Government. For almost two years thereafter the checks continued to be sent to the Bank which deposited them as formerly. Nineteen of the twenty-two checks at issue bear the following indorsement:

"Credited to the account of
the within-named payee

Absence of payee's endorsement
guaranteed

The National Bank of Commerce
in New Orleans"

Two of the checks bore the Bank's indorsements similarly styled:

"Pay any bank, P. E. G."

The indorsement by the Bank on the remaining check reads:

"Through New Orleans Clearing House
or pay to the order of any
bank, banker or trust co.

All prior endorsements guaranteed"

On or about April 1, 1967, Clark's heirs notified the Bank of payee's death but not of the date thereof. When the April 1, 1967 annuity check was received

---

[1] The sum of $212.67, representing annuity benefits accrued from May 1 to May 20, 1965, is presently payable to the heirs of Raymond D. Clark, which amount the Government is withholding pending the outcome of this litigation.

by the Bank it returned it to the Civil Service Commission with a notation that payee had died.

On June 23, 1967, an application for death benefits under the Federal Employees' Group Life Insurance Plan was made by the Clark heirs to the Civil Service Retirement System, on which the date of death was shown to be May 27, 1967. (The correct date of death was later verified as May 20, 1965.) Pursuant to the claim, the sum of $5,600, representing insurance benefits, and forming no part of the amount at issue, was paid to the heirs. These benefits, however, were not paid through the Civil Service Commission but directly through the Metropolitan Life Insurance Company from which the Commission purchases all Federal Group Life Insurance policies. See 5 C.F.R. §§ 870.101 and 871.101.

On July 24, 1967, an ex parte judgment of possession was rendered by the Civil District Court for the Parish of Orleans, Louisiana, in the Succession of Clark, sending the heirs into possession of Clark's estate, particularly the bank account in the name of the deceased. Upon presentation of a certified copy of the judgment, the Bank delivered to counsel for the heirs a check in the sum of $7,256.22, covering the balance remaining in Clark's account.

Finally, on November 29, 1967, the Government notified the Bank by letter that it was demanding refund of the amount of overpayment to the heirs, represented by the twenty-two checks, whereupon the Bank advised that it had disbursed the funds to the heirs. This suit by the Government against the Bank for recovery of the sum of $7,241 followed.

The Government contends that a uniform federal rule governs the rights and liabilities of the United States on treasury paper, that this rule is incorporated in the pertinent Federal Regulations issued by the Department of the Treasury, under which the Bank is liable as guarantor. The Bank contends, on the other hand, that the Federal Regulations are inapplicable, that it is fully protected by Louisiana law,[2] and that it was incumbent on the Government to inform it that the deceased was not entitled to the checks dated subsequent to payee's death. Each party contends that the other is guilty of laches.

The applicable Federal Treasury Regulations, in effect between 1965 and 1967, the relevant period herein, provide in pertinent part as follows:[3]

31 C.F.R. § 360.0:

"The indorsement of checks drawn on the Treasurer of the United States shall be governed by the regulations in this part. * * *"

§ 360.2:

"The presenting bank and the indorsers of a check presented to the Treasurer for payment are deemed to guarantee to the Treasurer that all prior indorsements are genuine including that of the drawer when the check is drawn in the drawer's favor, whether or not an express guaranty is placed on the check. When the first indorsement has been made by one other than the payee personally, the presenting bank and the indorsers are deemed to guarantee to the Treasurer, in addition to other warranties, that the person who so indorsed had unqualified capacity and authority to indorse the check in behalf of or in lieu of the payee."

2. Louisiana Statutes Annotated-R.S. 6:66 provides in pertinent part the following: "Upon proper authority and upon obtaining a receipt therefor, any bank may transfer any money or other property in its possession, belonging to a deceased person, to the decedent's * * * heirs * * *."
 "The * * * judgment recognizing and putting the heirs in possession, issued by a court of competent jurisdiction, * * * shall constitute proper authority for making the transfer, which when so made and receipted for shall be full protection to the bank."

3. These Regulations are in substance identical to the present Regulations now in force. See 31 C.F.R. §§ 360.8–12 (1970).

§ 360.4:

"(a) Checks issued for the following classes of payments, the right to which does not terminate with the death of the payee, will when indorsed by an executor or administrator be paid by the Treasurer without the submission to the Treasurer of documentary proof of the authority of the executor or administrator:

\* \* \* \* \* \*

"(b) *Other classes of checks must not be negotiated after the death of the payee but must be returned to the drawer or to the administrative office which authorized issuance of the check for determination whether, under applicable laws, payment is due and to whom it may be made. Examples of these classes of checks are as follows:*

\* \* \* \* \* \*

"*2. Annuities.*

\* \* \*" (Emphasis supplied.)[4]

It is not disputed that Clark's right to the annuity checks terminated at his death. It is equally clear that the Bank had no authority to negotiate the instruments after that time.

 This suit by the Government was filed pursuant to 31 C.F.R. § 360.5 (Supp.1967), which accords the Treasurer the "right to demand refund from the presenting bank of the amount of a paid check if after payment the check is found to bear a forged or *unauthorized* indorsement or an indorsement by another for a deceased payee where the right to the proceeds of such check terminated upon the death of the payee. \* \* \*" (Emphasis supplied.) Under the express warranty, stamped by the Bank on the reverse side of each check, and the Federal Regulations above quoted, we find the Bank liable.

 We disagree with the District Court that the loss, if any, was caused by the failure of the Government to act promptly. It was the Bank and not the Government which first learned. of Clark's death through his heirs. The Government had no knowledge of payee's death until the Bank notified it. The Government immediately discontinued forwarding the checks to the Bank. Demand was made on the Bank within seven to eight months after notification of death. It is pertinent to note at this point that the period of limitation for the Government to institute this proceeding to enforce the liability of the Bank as indorser, growing out of an unauthorized signature on a Government check, is six years. See 31 U.S.C. § 129. While there is dictum in Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), relied on by the District Court here, that lack of prompt notice by the drawee of a Treasury check in notifying the presenting bank of a forged indorsement, may bar recovery by the drawee, this is not such a case. In *Clearfield,* the Court expressly rejected the defense of laches in the absence of proof of damage, stating, "But the damage occasioned by the delay must be established and not left to conjecture." 318 U.S. at 369, 63 S.Ct. at 576. We do not consider the lapse of time before demand was made in the instant case as constituting lack of due diligence on the part of the Government. This is particularly true where, as in the instant case, the presenting bank first became aware of the circumstances which bore on the negotiability of the instruments. Due diligence by the Bank upon learning of payee Clark's death, would have caused the Bank to retain the funds in its possession in deceased Clark's account, until

---

4. Appellee Bank, at some length, discusses the inapplicability of 31 C.F.R. § 360.3 to the facts of this case. The argument is wide of the mark however, as the Government correctly points out, since no reliance upon Section 360.3 is made by the United States in the present matter.

it could be determined whether the proceeds belonged to the deceased. Without having resolved any of these questions, and without notifying the Government, the Bank chose to deliver to the heirs the proceeds of the account, to which they were not entitled. In doing so the Bank acted at its own peril. The equitable principles of Price v. Neal, 3 Burrows 1355 (1762), relied on by appellee, are accordingly inapposite to the Bank's position.

The *Clearfield* case supports the Government's contention. In that case the Supreme Court held state law to be inapplicable in an action brought by the United States to recover on a check drawn on the Treasurer of the United States on April 28, 1936. The check was mailed to the payee, an employee under the Works Progress Administration. The check was intercepted by another, forged, and presented to the J. C. Penney Company which indorsed it over to the Clearfield Trust Company. Clearfield accepted the check for purposes of collection and indorsed it as follows: "Pay to the order of Federal Reserve Bank of Philadelphia, Prior Endorsements Guaranteed." This type of guarantee was required by Treasury Regulations, 31 C.F.R. §§ 202.32, 202.33. On or before May 10, 1936, payee informed his foreman and timekeeper that he had not received the check in question, which information was "duly communicated to other agents of the United States." 318 U.S. at 365, 63 S.Ct. at 574. On November 30, 1936, payee executed an affidavit alleging that the indorsement was a forgery. Clearfield Trust and J. C. Penney Company were notified of the forgery on January 12, 1937. Approximately 7½ months later, on August 31, 1937, the Government notified Clearfield Trust Company that it was asking for reimbursement and later filed an action to recover. The District Court held that the law of Pennsylvania governed and that the United States was barred from recovery because of its unreasonable delay in notifying Clearfield of the forgery. The Court of Appeals for the Third Circuit reversed (130 F.2d 93) and the Supreme Court affirmed the Circuit Court in the following language:

"We agree with the Circuit Court of Appeals that the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, does not apply to this action. The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power. This check was issued for services performed under the Federal Emergency Relief Act of 1935, 49 Stat. 115, 15 U.S.C.A. §§ 721–728. The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state. [Citations omitted]. The duties imposed upon the United States and the rights acquired by it as a result of the issuance find their roots in the same federal sources. [Citations omitted]. In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards. * * *

"In our choice of the applicable federal rule we have occasionally selected state law. [Citation omitted]. But reasons which may make state law at times the appropriate federal rule are singularly inappropriate here. The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identi-

cal transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain. And while the federal law merchant developed for about a century under the regime of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, represented general commercial law rather than a choice of a federal rule designed to protect a federal right, it nevertheless stands as a convenient source of reference for fashioning federal rules applicable to these federal questions.

"United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184, falls in that category. The Court held that the United States could recover as drawee from one who presented for payment a pension check on which the name of the payee had been forged, in spite of a protracted delay on the part of the United States in giving notice of the forgery. * * *" 318 U.S. at 366–368, 63 S.Ct. at 574, 575.

In Fulton Nat. Bank v. United States, 5 Cir., 1952, 197 F.2d 763, 764, we followed the reasoning in *Clearfield,* in holding that the rights and duties of the United States in disbursing funds and paying debts, being constitutional functions, are governed by federal law rather than local law, and that in the absence of delay occasioned by the Government and actual resultant injury to the presenting bank the United States was not barred from recovery. We find no substantial distinction between the instant case and the forgery cases cited. The delay was not due to fault by the Government. Furthermore, the Bank has its remedy against the heirs to recover monies erroneously paid to them.

Under the circumstances, summary judgment was appropriate, but should have been granted in favor of the United States.

Reversed.