UNITED STATES of America,
Plaintiff-Appellee,

v.

HIBERNIA NATIONAL BANK, Defend-
ant-Third-Party Plaintiff
Appellant-Cross-Appellee,

v.

Joseph M. RAULT, Jr., Third-Party
Defendant-Appellee-Cross-Appellant.

No. 86–3774.

United States Court of Appeals,
Fifth Circuit.

April 5, 1988.

Rehearing and Rehearing En Banc
Denied May 9, 1988.

Clarnece F. Favret, III, Favret, Favret, Demarest & Russo, New Orleans, La., for Hibernia Nat. Bank.

Joseph M. Rault, Jr., New Orleans, La., pro se.

Virginia Patton Prugh, Robert J. Ashbaugh, Washington, D.C., for U.S.

Before CLARK, Chief Judge, REAVLEY, Circuit Judge, and HUNTER,* District Judge.

EDWIN F. HUNTER, Jr., District Judge:

Hibernia National Bank appeals the district court's judgment which held that Hibernia is liable to the United States for $220,000. Cross-appellant Joseph Rault appeals the district court's judgment that he is liable to Hibernia for $110,000. The case was briefed and argued and we now affirm the judgment for the United States against Hibernia, but vacate and remand the judgment for Hibernia against Rault.

## I.

During 1982 the United States Army contracted with Rault Center Hotel of New Orleans for the hotel to provide lodging to new Army recruits. In the latter part of that year the hotel billed the Army for $24,844.50 for services rendered pursuant to the contract. On December 23, 1982, the Army issued a Treasury check to the hotel which contained two different figures. In the center or body of the check the amount to be paid is typed: "* * * 24844 DOLLARS/50 CENTS." On the right side of the check appears the amount of "$244844.50." The conflicting figures on the check went undetected by the Army.

On December 27, 1982, a hotel employee presented the check to Hibernia National Bank accompanied by a deposit slip for $24,844.50. Hibernia accepted the deposit and credited the hotel account for the amount listed on the deposit slip. The check was then forwarded for processing to the Hibernia operations center. In the operations center all checks are read by proof operators and are then "magnetic ink computer readable" (MICR) encoded which designates the amount of the check and other routing information. MICR encoding allows the check to be read by high-speed automated readers. The check was handled by Hibernia proof operator Monica Green. She apparently entered both the amount of the deposit ($24,844.50) in the proof machine and the amount of the right hand side of the check ($244844.50). As a result, an out of balance condition was created and the proofing machine signaled a $220,000 error.

Looking only at the deposit slip and the figure on the right side of the check, Monica Green determined that the error was the customer's, and prepared a penciled correction slip indicating a $220,000 credit which she sent to the corrections clerk. She did not bring the problem to the attention of a supervisor. Una Poree, the "Corrections Clerk," prepared a typed credit memo from Monica's penciled copy.

The district court found that when hotel employee Herman Taylor received the customer credit notice, he informed a Hibernia employee that the hotel account was credited for $220,000 more than the deposit. James Peterson, Herman Taylor's supervisor, testified that he also advised Hibernia of the overcredit in late December 1982. The overcredit to the hotel account was not adjusted.

Hibernia did not look into the situation despite the initial notification by Taylor and the follow-up telephone call placed by Peterson. Hibernia did not contact the Army, the Treasury Department, or the Federal Reserve Bank, but transferred the Treasury check with an accompanying letter to the New Orleans Branch of the Federal Reserve. Hibernia was given immediate provisional credit by the New Orleans Branch for the $244,844.50 shown on the cash letter. The Treasury check was then transferred to the Federal Reserve Bank of

* District Judge of the Western District of Louisiana, sitting by designation.

Atlanta where the check was read using an MICR reader. The check, a photo of the check, and the Federal Reserves accounting record of the transaction were then sent to the Treasury for final examination in January 1983.

It generally takes the Treasury six months to reconcile check payment data with drawn checks. Where there is an overpayment on a Treasury check, the Treasury issues an adjustment to the Federal Reserve Bank, which debits the account of the depository bank and sends the depository bank a copy of the adjustment. In the present case, for no known reason, the Treasury did not issue an adjustment.

Hibernia permitted the Rault Hotel to draw against the $244,844.50 deposit almost immediately. By August 31, 1983 the amount on deposit was $102,475.87. In September of 1983 Hibernia permitted Rault to withdraw $100,000 to be used for the purchase of a certificate of deposit in another institution.

In August 1983 the Army Finance Office received notice of a possible overpayment. In February 1984, the Army Finance Office received a copy of the check and noticed the overpayment. The United States demanded repayment of the $220,000 from the hotel and Hibernia; both parties refused these demands.

The United States filed suit alleging that Hibernia National Bank and Rault Petroleum Corporation, which wholly owned Rault Center Hotel, converted the $220,000 overpayment on the Treasury check. Hibernia filed a cross-claim against Rault Petroleum Corporation for fraud and a third-party negligence claim against the United States and the Federal Reserve Bank. Hibernia also filed a third-party claim against Joseph Rault individually alleging that he fraudulently converted the proceeds of the Treasury check. Rault Petroleum Corporation was placed in involuntary bankruptcy and all proceedings against the corporation have been stayed.

The district court held that the Treasury check was a valid $24,844.50 check, and that Hibernia failed to exercise ordinary care by processing the check for $244,-844.50. Judgment was entered in favor of the United States and against Hibernia for $220,000.[1] Judgment was also entered for Hibernia and against Joseph Rault for $110,000.

## II.

### *United States v. Hibernia National Bank*

Hibernia first contends that the district court erred by applying federal law to the

---

1. The district judge entered specific conclusions as to Hibernia's fault:

3) Hibernia National Bank owes the United States a federal common law duty to exercise good faith and ordinary care in the handling of United States Treasury checks. U.C.C. § 4–103(1); *Bullitt County Bank v. Publishers Printing Co.*, 684 S.W.2d 289 (Ky.Ct.App.1984); *Charles Ragusa & Son v. Community State Bank*, 360 So.2d 231 (La.App. 1st Cir.1978).

6) Hibernia breached its duty to exercise ordinary care when, presented with a check containing conflicting figures, it failed to contact the payor to ascertain the correct amount before negotiating the check. *McCook County National Bank v. Compton*, 558 F.2d 871 (8th Cir.), *cert. denied*, 434 U.S. 905, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977).

7) Hibernia breached its duty to exercise ordinary care by failing to inform the Federal Reserve Bank concerning the discrepancy on the face of the check.

8) Hibernia further breached its duty to exercise ordinary care when it incorrectly IMCR encoded the amount payable on the check. It

also breached its duty by failing to follow reasonable instructions of its customer as to the correct amount.

10) Hibernia breached its duty to exercise ordinary care when its proof operator, acting in accordance with Hibernia policy failed to reconcile the amount of the deposit slip with the amount in the body on the instrument once alerted to a discrepancy when the proofing machine went out of balance.

11) Hibernia breached its duty to exercise ordinary care when it failed to investigate the overpayment subsequent to notification by Herman Taylor and James Peterson.

13) Hibernia's failure to exercise ordinary care was the proximate cause of the loss suffered by the United States in the amount of $220,000.00.

16) Since Hibernia's failure to exercise ordinary care was the proximate cause of the loss suffered by the United States, Hibernia is liable for the $220,000.00 overpayment. Hibernia, however, did not act in bad faith with regard to its actions.

claim against it, insisting that state law rather than federal law controls.

■ It is well that "[t]he rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law." *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–68, 63 S.Ct. 573, 87 L.Ed. 838 (1943). In *Bynum v. FMC Corp.*, 770 F.2d 556, 568 (5th Cir.1985), this Court states that federal common law must be applied where the application of state law would frustrate federal policies or interfere with the United States' duties or authority, the "most obvious example" being "a controversy whose outcome would have an immediate effect on the federal treasury." Because the application of federal law is intended to further federal policies it is immaterial that a particular federal statute is not applicable.

The district court found that Herman Taylor of Rault Center Hotel notified Hibernia of the overpayment in late December 1982, and thus Hibernia had actual notice of the overpayment. Hibernia contends this finding is clearly erroneous because Hibernia employees testified that they did not remember Taylor or any other hotel employee advising them of the overcredit, and because of the large amount involved they would have remembered if they had been advised of the overcredit.

A finding is "clearly erroneous" under Fed.R.Civ.P. 52 when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). "[W]hen a trial judges' finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The district court's finding that the hotel gave actual notice of the over-credit to Hibernia is not clearly erroneous.

Section 4–202(1) of the Uniform Commercial Code (West 1977) imposes on all banks a duty of ordinary care in forwarding checks it accepts for collection. The trial court, after reviewing all the evidence, expressly concluded that Hibernia breached its duty. The rationale for this conclusion is emphasized by the trial court's specific findings. (footnote 1, supra)

■ Hibernia argues that the routine and customary banking practice is to encode deposited checks for the amount on the right of the check, rather than the amount in the body. They insist that there was no breach of duty on its part because "the check was paid according to the instructions of its maker—the Army—for the amount of $244,844.50." which appeared on the right of the check. Section 3–118(c) of the U.C.C. provides that "[w]ords control figures except that if the words are ambiguous figures control." Though the Treasury check does not state an amount expressed in words, the district court held, and we assuredly agree that the figure in the body of the check, in the place customarily reserved for words, is the controlling amount.[2] H. Bailey & R. Hagedon, Brady on Bank Checks § 3.17 at 3–19 (5th ed. Supp.1986). Hibernia's reliance on commercial custom is misplaced. Commercial custom does not apply where the U.C.C. provides otherwise. *See* U.C.C. § 1–103; also U.C.C. § 3–104, Official Comment 2 ("[A] writing cannot be made a negotiable instrument within this Article by contract or by conduct.") Moreover, it would be inequitable to apply the banking industry's unilateral "custom" to a maker, such as the Army, that is unaware of or may not recog-

---

**2.** Hibernia also argues that the district court erred by applying U.C.C. § 3–118(c) because the check does not state an amount in words and the figures are ambiguous. Hibernia's argument is self-defeating. Either the check is a valid $24,844.50 check, or the document is non-negotiable because it does not state a "sum certain." U.C.C. § 3–104(1)(b). In either event Hibernia failed to exercise ordinary care when the item was processed as a $244,844.50 check.

nize such a custom.[3]

■ Hibernia next asserts that its actions only caused an over-credit to be placed in the hotel's checking account, and that the loss was caused by Joseph Rault's fraudulent depletion of the account which was an intervening superceding cause of the loss and not foreseeable by Hibernia. This argument is spurious. Hibernia's mistake in overcrediting the hotel's account made Rault's depletion of the account possible, thus Rault's use of the funds was not "intervening." Furthermore, it is foreseeable that when a bank overcredits a customer's account, and the customer advises the bank of the overcredit but the bank fails to act, the customer may conceivably deplete the account.

■ Hibernia contends that the United States was negligent because the Army completed the check with conflicting figures and neither the Federal Reserve or the Treasury noticed the error. They insist that the trial court erred by failing to apply comparative negligence principles and failing to apportion liability. Comparative fault principles are not generally applicable to commercial transactions. *See Bradford Trust Co. v. Texas American Bank-Houston*, 790 F.2d 407, 409 (5th Cir.1986). The transactional analysis of the U.C.C. places liability on the party that is in the best position to guard against the mistake which gives rise to the loss. *United States Fidelity and Guaranty Company v. Federal Reserve Bank of New York*, 620 F.Supp. 361, 369–70 & n. 14 (S.D.N.Y.1985), *aff'd*, 786 F.2d 77 (2d Cir.1986). In the present case the bank was not only in the prime position to remedy the mistake, but by improperly encoding the check was the cause of the mistake. The erroneous encoding made it possible for the over-payment to be made; therefore they should

plausibly bear the loss. H. Bailey & R. Hagedon, Brady on Bank Checks § 15.25 at 15–55 (5th ed. 1979). Hibernia asserts that the Government's delay contributed to the loss. However, on this record it cannot be determined to what extent the Government's delay was due to the misencoded check. In that context, we reiterate that Hibernia had immediate notice of the error and failed to act. *See United States v. National Bank of Commerce in New Orleans*, 438 F.2d 809, 812–13 (5th Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 64, 30 L.Ed.2d 57 (1971).

■ Uniform Commercial Code § 4–213(1) provides that "[u]pon final payment ... the payor bank shall be accountable for the amount of the item" Hibernia would have this court to hold that the "final payment" rule prevents the Government's recovery. This position is utterly without support. Under U.C.C. § 4–213(1) the Treasury is accountable for the "amount of the item" which is $24,844.50; this sum has been paid and is not at issue. The final payment rule under most circumstances bars recovery on the instrument. The Government's action is for the amount in excess of the instrument. It follows that recovery is not precluded by the final payment rule. This suit is predicated on Hibernia's negligence[4] (by encoding the check for $244,844.50) and breach of quasi-contract, resulting in the conversion of $220,000 of Treasury funds. The Government's suit for return of its Treasury funds is not an action on the instrument. Recovery is not prevented by final payment on the instrument. *See e.g. United States v. National Bank of Commerce in New Orleans*, 438 F.2d 809.

We affirm the judgment in favor of the United States against Hibernia. This is the end of the matter.

---

**3.** The district court, without assigning reasons, struck the testimony of Hibernia's expert witness James Stone who testified that banks routinely proof only the figure on the right of the check. Hibernia contends that Stone qualified as a witness and the district court erred. Because the banking industry's unilateral custom

is immaterial, the district court's error, if any, in striking Stone's testimony was harmless.

**4.** We emphasize our total agreement with the trial courts conclusion that Hibernia "did not act in bad faith with regard to its actions."

## III.

### Hibernia National Bank v. Joseph Rault

■ We recognize the difficulties faced by the district judge on this facet of this litigation. We quote from his findings:

11) During the period of December, 1982 until September 1983, Rault Petroleum Corporation, through its representatives, spent the monies comprising the overpayment in the 1111 Operations Account to the detriment of Hibernia.

12) Joseph Rault, Jr. had knowledge of the source of the $220,000 credit and was aware that it was due to an overpayment on the Treasury check. He failed to advise Hibernia of the discrepancy in the 1111 Operations Account though he was regularly advised and, indeed, knew of the excess balance in the account certainly as early as March 4, 1983. The balance in the account on March 31, 1983 was $139,138.18.

13) Notwithstanding his certain knowledge of the overpayment, Joseph Rault, Jr. took no action to escrow, or instruct any of his employees to escrow the funds left in the account as a result of the overpayment. Joseph Rault, Jr. never delegated responsibility to any other officer, or employee of Rault Petroleum Corporation to inform Hibernia of the continuing overcredit but did take action to transfer those funds to other account which accrued to his personal financial benefit." (Record Excerpt, p. 1886)

17) The actions of Rault Petroleum Corporation and Joseph Rault, Jr. in transferring funds comprising the overpayment and depleting the 1111 Operations Account, was the cause in fact of the loss.

22) Fraud is a misrepresentation or a suppression of the truth made with the intention to either obtain an unjust advantage or to cause a loss. A corporate officer's failure to escrow monies which he knows were paid to the corporation by mistake is a non-dischargeable conversion, constituting fraud. *Lawrence Freight Lines, Inc. v. Transport Clearings-Midwest, Inc.,* 16 B.R. 890 (B.C.W.D.Missouri 1979)". (Record Excerpt, p. 1889–1890)

23) Joseph Rault, Jr. is responsible to Hibernia for reimbursement on an amount not yet specifically determined by the Court.

Subsequently, a judgment was signed holding Rault liable to the bank for $110,000 one-half of the overcredit funds and one-half of the judgment cast against the bank of $220,000. Both Hibernia and Rault note that no reasons were noted for the amount of the judgment. There is an absence of any indication of how, why or on what basis the trial court rendered judgment for $110,000. It appears to us that the only theories of law which could explain the one-half award are first, that Rault was personally comparatively half at fault in causing the loss. There are no findings consistent with this theory. Second, that when Rault first had a clear picture of the funds in the account; he had a personal duty to escrow these funds for the bank. Under this theory, the court would have had to conclude that the amount left in the account at that time was $110,000.

Prudence dictates that this Court not endeavor to review the judgment against Rault without knowing what theory, i.e. negligence or fraud, he was held liable under and without knowing the reasons for the amount of the judgment. That task, in the first instance, is best left to district court, which is free to invite additional briefing and/or argument if deemed appropriate, and to alter its findings and conclusions on this facet of the case if deemed appropriate.

The judgment in favor of Hibernia and against Rault is vacated and remanded for further considerations in accordance with this opinion.

AFFIRMED IN PART AND VACATED IN PART AND REMANDED.