GALATIA COMMUNITY STATE BANK *v.* Eugene KINDY, Individually and Eugene Kindy, d/b/a Gene's Truck Service

91-234                                    821 S.W.2d 765

Supreme Court of Arkansas
Opinion delivered December 23, 1991

468

*Cypert, Crouch, Clark & Harwell*, by: *Brian L. Spaulding*, for appellant.

*Howard L. Slinkard, P.A.*, by: *Mary M. Schneider*, for appellee.

DAVID NEWBERN, Justice. The appellant, Galatia [Illinois] Community State Bank, honored a check for $5,550.00 which was the amount imprinted by a check writing machine in the center, underline section of the check commonly used for stating the amount in words. The imprint looks like this:

RegistereD

No. 497345    **5550 *DOL'S* 00 *CTS*

The impression made by the checkwriting machine can be felt on the front and the back of the check, and "**5550 *DOL'S* 00 *CTS*" is imprinted in red ink. In the box on the right hand side of the check commonly used for numbers "6,550.00" appears in handwriting, but the 6 has been altered by hand so the amount reads "5550.00." Galatia Bank sued the appellee, Eugene Kindy, who was the drawer of the check after it had been dishonored. We must decide whether Galatia Bank was a holder in due course and thus entitled to recover despite the failure of consideration defense Kindy has against the payee.

The Trial Court held that, because a Galatia Bank employee changed the "6" in the handwritten portion to a "5," the Bank did not take the check in "good faith" and thus was not a holder in due course. We hold Galatia Bank was a holder in due course because it was entitled to rely on the imprinted center underline section of the check, and the "alteration" which reconciled the terms was not a sufficient basis to hold that Galatia Bank acted in other than good faith.

Kindy buys and sells diesel engine parts. He agreed to buy four diesel engines from Tony Hicks who was to deliver them. The purchase price was $13,000. Kindy agreed to wire transfer $6500 and pay the remainder by check. Kindy testified he and Hicks agreed the check would not be cashed until the motors were delivered to an address in Canada.

Kindy wired the $6500 in late June of 1989, and concurrently wrote and mailed the check which was postdated July 6, 1989. Kindy placed two different amounts on the check because he did not want the check to be honored until Hicks delivered the engines. Kindy testified he thought if he made the check out with the two different amounts a bank would either call him to find out if it was good, or at least notify him before honoring it. He felt he could protect himself in that manner.

Hicks presented the check to the Galatia Bank on July 10, 1989. He received $800 in cash and credit to his account for $4,750. To reach the factual conclusion that a Galatia Bank employee had altered the check, the Court first determined that

the party filling out the accompanying deposit slip originally wrote 6550.00, crossed out that amount, changed it to 5550.00, and initialed the change. Those initials on the deposit slip were not the initials of Tony Hicks. The change was presumed to be the work of a Galatia Bank employee based on the particular steps taken in changing the slip. The Court found a difference between the handwriting on the deposit slip and Hicks' endorsement on the back of the check. From this evidence, the Court inferred a Galatia Bank employee filled out the deposit slip. The Court then found the handwriting on the deposit slip similar to the "5" which had been written over the "6." It was thus concluded that a Bank employee had made the alteration.

Galatia Bank sent the check through the Federal Reserve System for collection, and it was presented to First National Bank of Siloam Springs/Gentry for final payment. Kindy had previously told First National Bank to call him when the check was presented so he could determine whether Hicks had delivered the engines. First National Bank called Kindy when the check was presented, and Kindy said not to pay the check because the engines had not been delivered.

The check was returned to Galatia Bank on July 18th. Galatia Bank again presented the check to First National Bank, but the check was again returned as Kindy had placed a stop payment order. Galatia Bank sued for $4753.64, the amount it lost as the result of Hicks drawing down the account in which the check had been deposited.

The Trial Court reviewed Ark. Code Ann. § 4-3-118(b) and (c) (1987) which has since been superseded by Ark. Code Ann. § 4-3-114 (Supp. 1991) but which was in effect at the time in question in this case. The statute provided in relevant part:

4-3-118. Ambiguous terms and rules of construction.

The following rules apply to every instrument:

\*\*\*

(b) Handwritten terms control typewritten and printed terms, and typewritten control printed.

(c) Words control figures except that if the words are ambiguous figures control.

***

In its opinion the Trial Court found the statute not to be helpful as the two subsections as applied in this case were contradictory. That conclusion was not crucial, however, to the Court's ultimate holding that the Galatia Bank acted other than in good faith and thus did not meet the requirement of Ark. Code Ann. § 4-3-302(b) (1987), now found at Ark. Code Ann. § 4-3-302(a)(2)(ii) (Supp. 1991).

### Holder in due course

### 1. Good faith

If Galatia Bank had made a "fraudulent and material" alteration of the check without Kindy's assent, no doubt Kindy's liability on the instrument would have been discharged. Ark. Code Ann. § 4-3-407(2)(a) (1987). The new Code provision is slightly different. *See* Ark. Code Ann. § 4-3-407 (Supp. 1991). The Trial Court found specifically that the alteration was not done "fraudulently," and refused to hold Kindy was discharged. That finding was correct. *See Winkle* v. *Grand National Bank*, 267 Ark. 123, 601 S.W.2d 559 (1980); *Shinn* v. *First Nat'l Bank of Hope*, 270 Ark. 774, 606 S.W.2d 154 (Ark. App. 1980). The Court held, rather, that Galatia Bank was not a holder in due course because it did not take the check in "good faith."

"Good faith" is defined at Ark. Code Ann. § 4-1-201(19) (1987 and Supp. 1991) as "honesty in fact in the conduct or transaction concerned." While we have referred to the "good faith" requirement found in § 4-3-402(1)(a) (1987), *Richardson* v. *Girner*, 282 Ark. 302, 668 S.W.2d 523 (1984), it has not, so far as we know, been the basis of a holding by this Court. Professors White and Summers write that the good faith requirement is closely related to the requirement of Ark. Code Ann. § 4-3-302(c) (1987) that the holder not have "notice that it [the instrument] is overdue or has been dishonored or of any defense against or claim to it on the part of any person." 1 J. White and R. Summers, *Uniform Commercial Code* (3rd ed. 1988). The authors point out that there is a difference between the two requirements, and suggest that the good faith should be a subjective one as was intended by the drafters of the Code.

We cannot agree with the Trial Court's conclusion that

Galatia Bank was not acting in good faith. There is neither evidence nor legitimate speculation that Galatia Bank or the employee was found to have performed the alternation intended harm to any party. As will be discussed below, it was proper for Galatia Bank to accept the check as being in the amount of $5,550, and the alternation did no more than cause the instrument to recite that amount uniformly. There was no evidence before the Court to suggest that the change was done other than with "honesty in fact in the . . . transaction concerned."

## 2. Notice

The frustration expressed by the Trial Court with respect to § 4-3-118 (1987) which stated the applicable rules of construction for negotiable instruments is understandable. The statute says words control figures unless the words are ambiguous, and handwritten terms control typewritten and printed terms, and typewritten control printed. The question here is not so much whether the check should have been honored for the amount expressed by the checkwriting machine or in the handwritten numerals. Rather, having decided the alteration of the check did not cause Galatia Bank to take the check in other than good faith, the remaining question is whether notice of the inconsistency destroyed Galatia Bank's standing as a holder in due course.

The 5550.00 amount imprinted by the checkwriting machine upon the line customarily used for words is expressed in figures and not in words. One question is whether imprinted numbers located where words are customarily placed on a check control figures placed where figures are customarily placed. Another question is whether handwritten figures control printing.

We find both question satisfactorily answered in *St. Paul Fire & Marine Ins. Co.* v. *State Bank of Salem*, 412 N.E2d 103 (Ind. App. 1980). In that case, there was a conflict between an amount imprinted by a check imprinting machine and numbers expressed in typewritten figures. The Court recognized the imprinted amount was not expressed in words, but held "the purposes of the U.C.C. are best served by considering an amount imprinted by a checkwriting machine as 'words' for the purpose of resolving an ambiguity between that amount and an amount entered upon the line usually used to express the amount in figures." The Court quoted from a pre-U.C.C. case, *United*

*States Fidelity and Guaranty Company* v. *First National Bank of South Carolina of Columbia*, 244 S.C. 436, 137 S.E.2d 582 (1964), as follows:

> A prime purpose, as we see it, of making a sum payable when expressed in words controlling over the sum payable expressed in figures is the very fact that words are much more difficult to alter. The perforated imprinting by a check-writing machine, while expressing the sum payable in figures, is even more difficult to successfully alter than a sum payable in written words.

■ Because a check imprinting machine's purpose is to protect against alterations, the amount shown on the imprint should control whether the number is in words or figures. *Hawkland & Lawrence U.C.C. Series* § 3-118:06 (Art. 3) (1984).

Turning to the question whether typewriting controls printing, the Indiana Court stated:

> As the section makes clear, in the event of an ambiguity between printed terms and typewritten terms, the latter would control. We do not consider the impression made by the check imprinter to be "printed" terms under this section. Accord, *United States Fidelity and Guaranty Company* v. *First National Bank of South Carolina of Columbia*, (1964) 244 S.C. 436, 137 S.E.2d 582, 589 (1964).

> A conflict between the two amounts on a check would be resolved by § 3-118(c) which states that words control figures. Arguably, the amount imprinted by the checkwriting machine upon the line customarily expressing the amount in words, is expressed in figures. . . . We think, however, that the purposes of the U.C.C. are best served by considering an amount imprinted by a checkwriting machine as "words" for the purpose of resolving an ambiguity between that amount and an amount entered upon the line usually sued to express the amount in figures.

■ Although the Court did not say specifically that it regarded the portion written by the checkwriting machine as the equivalent of handwriting, that is the clear effect of the decision.

In *U.S.* v. *Hibernia Nat. Bank*, 841 F.2d 592 (5th Cir. 1988),

a typed numerical amount was located in the place customarily used for words. This amount conflicted with the amount located in the place customarily used for figures. The Court found the typed amount controlling despite the fact it was not expressed in words.

As Professor Hawkland has written:

A purchaser does not obtain notice of a claim or defense solely because there is a conflict among handwritten, printed and typewritten terms. Although a purchaser might question whether some irregularity has occurred, the premise of section 3-118 seems to be that any conflict is a mere mistake and therefore should be ignored. [W. Hawkland & L. Lawrence, *U.C.C. Series* § 3-118:05 (Art. 3) (1984).]

■ Given these authorities, we conclude Galatia Bank was a holder in due course with respect to the check and should be allowed to recover against Kindy. Therefore, we reverse and remand for entry of a judgment consistent with this opinion.

Reversed and remanded.