liSAUNDERS, Judge.
Following an adverse judgment in connection with her suit for damages against the named defendant and its insurer, plaintiff appeals. For the following reasons, we affirm in part, reverse in minor part, and award damages of $5,000.00.
On September 3, 1993, about one hour before the accident giving rise to this appeal, plaintiff was a guest passenger in a Dodge pickup truck driven by Ana Rena Araiza and insured by Allstate Insurance Company when a concession stand trailer towed by the vehicle jackknifed, causing the driver to lose control. Eventually the truck and trailer came to rest roughly perpendicular to the roadway, with the trailer lying just off the right-hand shoulder on the grass.
|2The accident was investigated by State Troopers Tony Rawson and Ronald Dowden. During the course of the troopers’ investigation, traffic on 1-49 North slowed as it passed.
About one hour after the officers had been at the scene of the accident, defendant’s tractor trailer, driven by Cory Murphy, crested a hill south of the accident site as it proceeded along 1^49 North. In order to avoid rear-ending the back of another vehicle that slowed down in front of Murphy’s truck, he hit his brake and swerved onto the right shoulder. Startled by the sight of the truck, whose rear tires were smoking, Murphy shouted to the bystanders, including plaintiff, to “Watch out!” Responding to Trooper Rawson’s warning, plaintiff traversed the tongue of the trailer, followed immediately by Ms. Araiza. In her suit against the truck driver, his employer and insurer, plaintiff alleged that she was injured while trying to *758 hurdle the back end of the truck and tongue of the trailer, both raised between 3 and 4 feet above the ground following the initial accident on 1-49 North above Alexandria.
Plaintiff having settled her suit with Ms. Araiza’s insurer arising from the initial jackknifing incident, the current appeal is limited solely to whether plaintiff sustained additional injuries for which Cory Murphy’s employer may be held responsible. Following trial on the merits on May 23, 1995, in which plaintiff, Ms. Araiza, the officers, and Cory Murphy testified live and in which plaintiffs treating specialist, Dr. Stephen Flood testified by deposition, the trial court rendered judgment in favor of O.S. Johnson Construction Company, Inc. and its insurer, Aetna Casualty and Surety Company, and against plaintiff, Carol Ann Brian. The trial court’s oral reasons entered immediately following the close of evidence and closing arguments, follow:
Well I don’t think there is any question about what happened here. Everybody is pretty consistent on that. Other than whether or not |3Ms. Brian fell when she stepped over the tongue of the trailer. We have conflicting testimony on that.
[[Image here]]
It’s the Court opinion that the plaintiff has not borne its [sic] burden of proof of showing that the alleged actions of the defendant caused injuries sustained by Ms. Brian. I’m not doubting her. I’m just saying that the proof is lacking that is required by the law and the jurisprudence that the plaintiff bears the burden of proof.
In this instance the Court finds that the plaintiff has not borne the burden of proof, particularly in light of the testimony of Trooper Rawson, who said that he observed Ms. Brian step over the trailer. He did not see her fall. I have to accept that as being truthful, and again I am not doubting Ms. Brian. People just have different perceptions. But it all comes back to the fact that the Court finds that there has not been sufficient evidence to show that the injuries sustained by Ms. Brian were in fact caused or aggravated by the actions of the defendants. So the Court has no other alternative but to dismiss plaintiffs claims with costs. Judgment will be rendered accordingly.
In her devolutive appeal, plaintiff maintains that the trial court erred in holding that she did not sustain any injuries in traversing the tongue of the overturned trailer. Specifically, she takes issue with the trial court’s having required her to establish that she fell in order to recover, when the evidence overwhelmingly shows that her hasty retreat (even without falling) caused her injuries as firmly established by the medical evidence of Dr. Flood.
In response to these claims, defendants recant the trial court’s observation that Trooper Rawson was in a position to see plaintiff fall, stumble, or injure herself in any way, but saw nothing to that effect. Alternatively, they assert that it was plaintiffs failure to obey the officer’s directions to move off of the interstate’s shoulder and onto the adjoining embankment, and not the truck driver’s transgression, that caused the accident. “But for her conduct, her injuries allegedly would not have been sustained.” According to defendants, by the time plaintiff attempted to step over the trailer, the truck had already passed the accident scene in Ua slow and controlled manner. Finally, defendants argue that plaintiffs injuries had been caused not from crossing the tongue of the trailer, but from either the jolt of the initial one car accident or from a prior accident involving a horse in 1992.
Plaintiff seeks damages for cervical and lumbar strains, carpal tunnel syndrome, two herniated and two bulging discs, all of which she maintains were either caused or aggravated by the second incident of September 3, 1993. Plaintiff also seeks lost wages for delays in opening her counseling business she maintains are attributable to defendants’ negligence. As noted above, the trial court refused to award plaintiff any damages on the basis that she failed to establish that it was the second incident of September 3, 1993, and not some other, from which her complaints had risen.[1]
*759 It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978); A. Tate, “Manifest Error” Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the ^evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneous— clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 Term — A Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979). Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1983), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La.1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (LaApp. 1st Cir.1983), citing McDonald v. Book, 215 So.2d 394 (La.App. 3d Cir.1968), overruled on other *760 grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3d Cir.1976). Cf. Anderson, supra, at 575, 105 S.Ct. at 1512; Schexnider v. McDermott International Inc., 868 F.2d 717, 720 (5th Cir.1989); Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752, 770 (5th Cir.1989); U.S. v. Hibernia National Bank, 841 F.2d 592, 595 (5th Cir.1988); Hanson v. Veterans Administration, 800 F.2d 1381, 1388 (5th Cir.1986).
Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
Having reviewed all of the evidence, we see no basis for upsetting the trial court’s judgment with respect to virtually all of plaintiff’s injuries. Plaintiffs carpal tunnel syndrome clearly was not causally connected to the eighteen wheeler incident. To the contrary, according to Dr. Flood, plaintiffs carpal tunnel syndrome was almost certainly caused either by repetitive traumas associated with plaintiffs typing, or from the first incident when she probably jammed her hand into the dashboard. According to Dr. Flood, unless there was some evidence to suggest that plaintiff had jammed her hand in avoiding a fall, the chance was virtually nil that her evading danger was somehow connected to the injury.
Likewise, we find no clear error in its determination that plaintiffs cervical injuries, or her degenerative cervical and lumbar disc troubles, were neither caused nor aggravated by the subject accident. The evidence would have it appear that if any accident of September 3, 1993, is blameworthy for these difficulties, it was the initial jackknife and not subsequent events.
The evidence is far less clear with respect to plaintiffs lumbar strain, however. For her part, plaintiff steadfastly maintains that her present back injuries were caused by her attempts to evade the perils thrust upon her and the troopers by the eighteen wheeler. While plaintiff conceded that she had in fact sustained some back pains in her 1992 accident in which she fell from a horse, without contradiction she indicated that these back pains had abated by March 1993, six months before the accident, when the medication she had been prescribed for back pains ran out. According to plaintiff:
pWhen I went over I landed and it — in my back. I gave, like this, and I felt my back, you know, just like this, like it hit onto something inside my back, and caused me to like given into it. And my friend was right behind me, so she supported me some, and we continued to go. She continued to help me and we continued to proceed down the hall. It felt as though — and I told her, “now I’ve hurt my back.”
Her testimony was consistent with Ms. Araiza’s testimony, whose colloquy follows:
Q. All right. Later on, after you were on the side of the highway, did you hear an officer yell at you or holler at you in any regard?
A. Yes, I did. I heard this (Interrupted).
Q. What did you hear?
A. “Get out of way quick”, or whatever it was, and it was in such a tone of voice you knew you had to leave quick. Which time we ran — Ms. Brian jumped, and I was at her heels. I mean I was right behind her. How I got over it, I don’t know, but I was right behind her, and as she hit she started to fall. I grabbed her arm, because we were at an incline. I grabbed her and I held her up, and got her down and she said, “I’ve hurt my back.” She said, “Oh hell, I’ve hurt my back.”
La.Civ.Code art. 2315 states:
Art. 2315. Liability for acts causing damages
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
There is nothing in the record to discredit the testimony of these individuals. In fact, the trial court’s express basis for denying relief to plaintiff was its finding that plaintiff in fact did not fall. Under the *761 circumstances of this case, we conclude that the trial court erred in holding so. The evidence, including both lay and medical evidence, overwhelmingly suggests that plaintiffs injuries did not pre-exist the second event, notwithstanding the fact that plaintiff in all likelihood did not fall. IgRecovery under La.Civ.Code art. 2315 did not require plaintiff to fall in order to recover, and the trial court erred in finding to the contrary. Thus, we conclude that the trial court erred in withholding damages to plaintiff for her soft tissue injuries to her back from September 3, 1993, through November 1993. While plaintiff maintains that her disability extended beyond this period, the record does not connect this duration of disability to plaintiffs lumbar strain. Accordingly, to the extent plaintiff has established a disability of such long duration, it is not these defendants who are accountable.

DECREE

For her pains and associated difficulties, we believe that plaintiff is entitled to damages totaling $5,000.00, plus costs and interest, which we presently render. Defendants are cast with all costs at the trial level and on appeal.
AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.
AMY, J., concurs in part and dissents in part and assigns written reasons.
YELVERTON, J., dissents and assigns written reasons.

. Quoting from that portion of the trial court's oral reasons omitted in the text of this opinion:
*759 As I mentioned before, the Court has read the deposition, submitted by plaintiff’s counsel, of Dr. Flood in which he of course doesn’t know which of the three accidents — Ms. Brian suffered the horse accident, or the jolt from the initial impact or turning over on the highway, on 1-49 or when she allegedly stepped over the trailer and fell.