JjDOUCET, Chief Judge.
The Plaintiff, Wiley Stewart, appeals the trial court’s judgment dismissing his claim that the Defendants wrongfully terminated his health insurance coverage.
After thirty years working as a coach and teacher with the Calcasieu Parish school system, Wiley Stewart retired in 1987. At that time, he chose to continue his School Board sponsored health and life insurance coverage with Washington National Insurance Company by paying premiums. He asked that the premiums be deducted from his pension checks but was told that this option was not available.
At some time between December 1992 and February 1993 Stewart’s insurance was canceled for non-payment. The Plaintiff brought this suit alleging wrongful termination. He also alleged that the Board was statutorily required to deduct premium payments from his pension checks. After a trial on the merits, the trial court instructed the jury that the law did not require the Board to deduct insurance premiums from pension checks. The jury found that the policy was properly canceled. The trial court then rendered judgment dismissing Stewart’s claim pursuant to the jury verdict. Stewart appeals.
On appeal, the Plaintiff raises four assignments of error. He alleges that the instructions and jury verdict sheet were erroneous and misleading, that the court erred in commenting on the facts and the evidence; that the court erred in ruling on the question of whether deduction of premiums was mandatory, thus removing that issue from the jury; and, finally, that the verdict was contrary to the law and the facts.
JURY VERDICT
The standard of review applicable to jury verdicts is well settled.
Lit is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La.1978); A. Tate, “Manifest Error” Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneous— clearly wrong standard to the findings *40 below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 Term — A Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979). Where documents or objective evidence so contradict the. witness’s story, or the story itself is IsSQ internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir.1983), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La.1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (La.App. 1st Cir.1983), citing McDonald v. Book, 215 So.2d 394 (La.App. 3d Cir. 1968), overuled[overruled} on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3d Cir.1976). Cf. Anderson, supra, at 575, 105 S.Ct. at 1512; Schexnider v. McDermott International Inc., 868 F.2d 717, 720 (5th Cir.1989); Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc., 866 F.2d 752, 770 (5th Cir.1989); U.S. v. Hibernia National Bank, 841 F.2d 592, 595 (5th Cir.1988); Hanson v. Veterans Administration, 800 F.2d 1381, 1388 (5th Cir.1986).
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (emphasis added) (footnote omitted).
In this case, the Plaintiff testified that he or his daughter would pay the premium on his insurance by taking the payment to the School Board office. He testified that on February 4, 1993 his daughter returned from attempting to pay his premium and told him that the payment had been refused. He could not recall what it was that made him feel the payment was due at that time. He further testified that he called Dr. Charles Oakley, who was at that time the superintendent of the Calcasieu Parish Schools. It was Stewart’s testimony that Oakley told him that the insurance would not be canceled or would be reinstated. However, on February 11, 1993, Stewart received a letter from Oakley stating that the insurance had been canceled for non-payment of premiums and would not be reinstated. Dr. Oakley testified that he never told Stewart that his insurance would not be canceled or that |4it would be reinstated. He testified that he *41 told Stewart only that he would look into the matter for him.
Stewart’s daughter, Wynetta Proctor, corroborated the Plaintiffs testimony with regard to her attempt to pay the premium. In connection with the testimony of Stewart and his daughter, a document was introduced into evidence, a copy of which is attached hereto as “Appendix A.” That document, Invoice # 10167, contains the following language: “PAY THIS AMOUNT BY 2/05/93 TO AVOID CANCELLATION-> $254.10.” A hand written notation at the bottom is dated 2/4/93 and states: “Mr. Stewart daughter visit Finance Dept. They sent her to the Ins. Dept. Charlotte and Mr. Stewart daughter went to Risk Management. Mrs. Sylvester told Charlotte to tell the girl the policy was cancel the Ins Co. We cannot accept the money.” On cross-examination, counsel for the Defendant had Ms. Proctor read a further written notation which is not fully visible on the copy made part of the record: “This is insurance department’s copy. Mr. Stewart receives the cancel notice only.”
As this court noted in Stewart v. Calcasieu Parish Sch. Bd., 97-904, p. 3-4 (La.App. 3 Cir. 2/4/98); 707 So.2d 487, 488, in reversing the trial court’s grant of the Defendants’ motion for summary judgment:
We find prima facie evidence in the record to substantiate his claim that his daughter attempted to pay his premium, but that the payment was refused and that it was refused improperly. Namely, we note that according to invoice number 101067, dated January 19, 1993, Stewart had until February 5, 1993 to pay for his premiums before his policy could be canceled; yet, the record also reveals that the School Board mailed a notice of cancellation to him on January 25, 1993, almost two weeks before the stated deadline. Noted by hand on that same invoice is the following: “Mr. Stewart, Daughter, visit Finance Dept. They sent her to the Ins. Dept. Charlotte and Mr. Stewart’s daughter went to Risk | sManagement. Mrs. Sylvester told Charlotte to tell the girl the policy was cancel [sic] the Ins. Co. We cannot accept the money.”
The date of Mr. Stewart’s daughter’s visit and attempt to pay the premium, February 4, 1993, is also handwritten above the note.
Stewart v. Calcasieu Parish School Bd., 97-904, p. 3-4; 707 So.2d at 488.
The Defendants introduced testimony that Invoice # 10167 was never sent to the Plaintiff and that he had received previous cancellation notices indicating an earlier cancellation date. However, this testimony is not sufficient to rebut the evidence of Invoice 10167, which indicates that payment by February 5, 1993 would be timely and that a timely attempt was made to pay the premium due. Accordingly, we find that the jury erred manifestly in finding that the policy was canceled. Consequently, the judgment of the trial court must be reversed.
DAMAGES
The record does not contain sufficient evidence to allow this court to determine the amount due to Stewart as a result of the Defendants’ failure to pay insurance claims accruing during the period of cancellation. As a result, this matter must be remanded to the trial so that it may review the applicable insurance policies as well as the claims which Stewart could have made under those policies.
CONCLUSION
The judgment of the trial court is reversed. This matter is remanded to the trial court for a determination of the appropriate award of damages. Costs of this appeal are assessed to the Defendants.
REVERSED AND REMANDED.
*42 16Appendix A
[[Image here]]